THE FIREMEN'S FUND INSURANCE COMPANY

*v.*

THE WESTERN REFRIGERATING COMPANY.

*Filed at Ottawa March 28, 1896—Rehearing denied October 7, 1896.*

1. INTEREST—*upon insurance policy—effect of statutory reduction of legal rate.* The rate of interest recoverable upon an insurance policy which contains no stipulation for interest, changes at the time of the taking effect of a statute reducing the legal rate of interest.

2. APPEALS AND ERRORS—*when error may be obviated by a remittitur and payment of costs.* Error in an instruction as to the rate of interest recoverable is obviated by entering a *remittitur*, on appeal, for the excess of interest, and payment into court of the appellant's costs in the court below and the costs of the appeal up to the time.

3. TRIAL—*construction of insurance policy is for the court.* It is the province of the court to construe a policy of insurance and determine what property it covers, where all the facts are admitted.

4. INSURANCE—*construction of policy—when property is "specifically insured."* Insurance upon "poultry and packages for same," issued to commission merchants dealing in other kinds of perishable merchandise, is specific insurance within the meaning of the provision of another policy insuring "merchandise and packages for same * * * not specifically insured," although no special lots are designated, where there was no attempt or desire to distinguish between different kinds of packages of poultry.

5. SAME—*stipulations in open policy as to waiver of conditions by agent—effect.* A stipulation in an open policy of insurance that only the managers of the company have authority to waive or modify conditions, does not include provisions as to what is to be done by the parties after a loss has been incurred, and representations by the holder of such policy, who issues a certificate to a third person therein, which deter suit within the time limited, will estop the company from asserting that the suit was not brought in time.

*Firemen's Fund Ins. Co. v. Western Refrigerating Co.* 55 Ill. App. 329, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

BATES & HARDING, for appellant.

FRY & MAHER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This suit was brought by appellee, in the Superior Court of Cook county, on a certificate or policy of insurance in the sum of $1500, issued by appellant December 20, 1890, to appellee. There was a recovery for $1774.50. The judgment has been affirmed by the Appellate Court.

On the trial the court instructed the jury that if they found the plaintiff entitled to recover they should include in their verdict interest at the rate of six per cent per annum from May 28, 1891, upon the amount they might find due, and this the jury did. There was no stipulation or agreement of parties for the payment of interest, and it was allowable only by virtue of the statute. The plaintiff, if entitled to recover, would be allowed to receive interest at the rate therein fixed. (*Peoria Marine and Fire Ins. Co.* v. *Lewis*, 18 Ill. 553; *Knickerbocker Ins. Co.* v. *Gould*, 80 id. 388.) On May 28, 1891, the statute allowed creditors to receive interest at the rate of six per cent per annum where there was no contract, but the statute was amended by the act in force July 1, 1891, changing the rate of interest from six to five per cent. Interest was not allowed at common law, but is solely the creature of the statute, and can only be recovered according to its terms. The rights of the parties in respect to interest were not governed by contract, but by statute, which might be changed at any time in the pleasure of the legislature, without impairing any contract or affecting any vested right. After July 1, 1891, there ceased to be any statute allowing interest at the rate of six per cent per annum, and the instruction was wrong. If money became due, under the provisions of the policy, before July 1, 1891, it would draw interest at six per cent to that date and at five per cent thereafter. This is not, in any sense, giving a retrospective effect to the statute.

The appellee, while contending that the instruction was right, has entered a *remittitur* in this court for $30.30, (the excess of interest from July 1, 1891,) and has paid into this court the appellant's costs in the Appellate Court and the costs of this court up to the time of entering the *remittitur*. By this means the error concerning interest has been obviated.

The following facts were proved at the trial and were not in dispute: The plaintiff was in the cold storage business in Chicago, and had several warehouses, among which was one known as "Warehouse C," situated at 231 and 233 Michigan street, where it received and kept in storage various kinds of perishable merchandise, such as eggs, butter, cheese, fruit, poultry, game and fish. Defendant is a California corporation, and Rumsey, Bliss & Co. are its local agents in Chicago. Defendant issued its open policy to its said agents to the amount of $500,000, under which the agents, on December 20, 1890, issued to plaintiff certificate No. 4467, insuring plaintiff against loss or damage by fire in the sum of $1500, subject to all the terms and conditions embraced in said open policy, "on merchandise and packages for same, their own or the property of others, not specifically insured, contained in the brick building known as the Western Refrigerating Co.'s warehouse C, situate Nos. 231 and 233 Michigan street, Chicago, Ill.," for the term of four months, to April 20, 1891. The building and contents were destroyed by fire January 29, 1891. This insurance was on what was called "Form C" furnished by the plaintiff. Plaintiff also had three other policies of insurance under what was called "Form A," aggregating $3000, "on poultry and packages for same, their own or held by them in trust or on commission, or sold but not delivered, contained in the brick building known as the Western Refrigerating warehouse C, situate Nos. 231 and 233 Michigan street, Chicago, Ill." A large amount of poultry was destroyed by the fire, and there was not suffi-

cient other property to make up the amount of this and other like policies under "Form C." Evidence was offered of the loss of the poultry, and its value, and the defendant moved to exclude all such evidence on the ground that the poultry was not covered by the policy. The motion was denied and defendant excepted.

It was the province of the court to construe the policy, and the facts being admitted, if the poultry was not embraced within the terms of defendant's policy the motion should have been sustained and the evidence concerning the poultry and its value excluded. The determination of that question depends upon the construction to be given to the term "specifically insured." On the one hand it is contended that the poultry, and packages for same, contained in the warehouse, were specifically insured, while on the other hand it is claimed that the property can only be so insured by designating particular articles, as by describing a lot of poultry bearing a specific mark, and designating the particular lot by packages and marks, as, "100 packages poultry marked X," or "50 packages marked Y," or "a lot of geese marked Z." The property stored in the warehouse was constantly changing. Merchandise was coming in and going out daily, and the plaintiff had claims against the property while in the warehouse, for advances, storage and other charges. All the insurance taken under both forms was intended to cover, and did cover, whatever was in the warehouse from time to time, and insured the interest of the plaintiff in such property. (*Peoria Marine and Fire Ins. Co.* v. *Anapow*, 45 Ill. 86.) If the construction contended for by plaintiff is correct, the parties, by excepting merchandise specifically insured, contemplated a practical impossibility, as there could be no specific insurance of such property. No doubt it is essential, to bring property within the term "specifically insured," that it should be designated and distinguished from all other property, so that such property should be definitely insured. If

the purpose was to distinguish lots of poultry from each other, it would be necessary to distinguish them by pointing out particular marks or packages. If any particular chattel was in question it would be necessary that it should be specified, and distinguished from all other chattels in a particular warehouse. But a description of all the chattels in a particular warehouse, or all the property of a particular kind in that warehouse, is a definnite, precise description, by which the property is specified and distinguished from all other property. "All the poultry contained in warehouse C, Nos. 231 and 233 Michigan street, Chicago, Ill.," is as definite and precise a description as "the poultry in a barrel marked X," or "a lot of geese marked Z." In this case the insurance, by defendant's policy, was upon merchandise, and packages for the same, in the warehouse, and this covered every variety of commodity stored therein. Included with various other kinds of merchandise there was one species consisting of domestic fowls, known as poultry. This was a specific class of merchandise, and to be specifically insured it was only necessary that it should be distinguished from the other kinds of merchandise. With respect to merchandise generally, in the warehouse, poultry was specific. There was no attempt to distinguish between different kinds of packages or poultry, so as to specify or separate one lot from another, but poultry was distinguished from the merchandise generally, and designated as insured, and all the poultry contained in the warehouse was included in the description. It seems to us such insurance was specific in its nature. This, we think, is the proper construction of the policy, and as that was the only question presented and as all the facts were conceded, the motion to exclude the evidence as to the poultry should have been sustained, on the ground that it was excepted from the terms of defendant's policy.

The open policy under which the certificate was issued provided that the right of action should be barred unless

suit was brought within six months after the happening of the loss. There was evidence that Bliss, of the firm of Rumsey, Bliss & Co., the local agents who held the open policy and wrote the certificate of insurance, stated to an officer of plaintiff when suit was ordered unless the claim was paid, shortly before the expiration of the six months, that he did not want suit commenced; that plaintiff should settle with the other companies and defendant would settle accordingly; that if they settled defendant would settle, and that the expiration of the limit of time would make no difference. Negotiations for settlement had been pending from the date when the proofs of loss were furnished, and the evidence tended to show that in consequence of these representations of Bliss suit was not brought within the time. It is complained that the court gave the third instruction asked by plaintiff, and refused the eighth, ninth and tenth instructions asked by defendant, on that subject. The third instruction, which was given, correctly stated the rule applicable to the evidence. The refused instructions were designed to inform the jury that Bliss had no authority to waive the condition relating to the limitation. This contention is based upon a stipulation in the open policy to the effect that only the manager of the company at Chicago had authority to waive, modify or strike from the policy any of its printed conditions. That stipulation has been held to have reference only to the conditions entering into and forming the contract of insurance, and to have no reference to provisions as to what is to be done by the parties after a loss has been incurred. (*Dwelling House Ins. Co.* v. *Dowdall,* 159 Ill. 179; *Franklin Fire Ins. Co.* v. *Chicago Ice Co.* 36 Md. 102; *Rokes* v. *Amazon Ins. Co.* 54 id. 512; *Blake* v. *Exchange Mutual Ins. Co.* 12 Gray, 265; *New Orleans Ins. Co.* v. *Matthews,* 65 Miss. 301.) Rumsey, Bliss & Co. held the open policy and issued the certificate. Bliss negotiated, as agent of the company, for settlement of the claim, and his relations to the com-

pany and the transaction were such that his representations, by which plaintiff was deterred from bringing suit within the limit, must be regarded as binding upon the company, and not affected by the limitation of power to waive, modify or strike from the policy any of its conditions.

For the error in ruling on the evidence concerning poultry lost or destroyed, and its value, the judgments of the Appellate and Superior Courts are reversed and the cause is remanded to the latter court.

*Reversed and remanded.*