528 P.2d 826

**Thurman BROWN, Jr., Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Employers Mutual Liability Company of Wisconsin, an insurance corporation authorized to do business in Arizona, Respondent,**

**M. M. Sundt Construction, a corporation authorized to do business in Arizona, Respondent.**

**No. 11577.**

Supreme Court of Arizona, In Banc.

Dec. 4, 1974.

Davis & Eppstein by Lars Pedersen, Tucson, for petitioner.

R. E. Taylor, Legal Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Shimmel, Hill, Bishop & Gruender, P. C. by Merton E. Marks, and J. Russell Skelton, Phoenix, for Employers Mut. Liability Ins. Co. of Wisconsin.

CAMERON, Vice Chief Justice.

This case came to the Supreme Court as a special action brought by Thurman

Brown, an injured workman, against Employers Mutual Liability and the Industrial Commission.

The issue presented in this case is whether the insurance carrier must continue payment of disability benefits previously awarded when the claimant petitions the Commission for a rehearing claiming the award was too low and when the respondent insurance company also requests a rehearing contending the award was too high.

The facts necessary for a determination of this case are as follows. Claimant was injured on the job on 15 October 1970; in December of that year he was awarded benefits of $287.91 per month based on his temporary 10% disability and 25% earning loss from Employers Mutual Liability Insurance Company, the Industrial Commission insurer in this case. On 23 August 1973 the Industrial Commission made a permanent disability award in this case of $102.92 a month. Employers Mutual Liability then asked for a hearing to decrease the amount of the award and at the same time terminated all benefits to the petitioner. On the 14th of September 1973 claimant also sought a hearing claiming a greater disability existed than the Industrial Commission found.

Also on 14 September 1973 the injured workman petitioned the Industrial Commission for payment of benefits during the request for hearing in this case. The Industrial Commission declined relying on § 23–952 A.R.S. and claimant brought a petition for special action in this court and we accepted jurisdiction.

The respondent Industrial Commission of Arizona filed a most helpful memorandum in response to the petition for special action. The Commission stated:

" * * * the Commission will not be adversely affected by either a resolution of the issue consonant with the position advanced by Petitioner nor will The Industrial Commission be prejudiced by a resolution of the issue by this Court consonant with the position advanced by the Respondent Carrier. The only interest that The Industrial Commission has in this matter is that the Commission be provided, in the form of a decision resolving the issue raised, judicial guidance in the administration and interpretation of the subject statute, A.R.S. § 23–952. The difficulties the Commission has experienced in the past in attempting to administer and enforce the statute are clearly established by the divergent positions proposed by Petitioner and the Respondent Carrier. * * *"

The statute involved reads as follows:

"§ 23–952. Continuation of order or award pending determination of increase in hearing or appeal.

"When an order or award is issued by the industrial commission, compensation shall be paid as provided in such order or award and shall not be interrupted when there is a petition for hearing or appeal to a higher court, provided the only issue in the petition for hearing or appeal is an increase in the previous order or award. Added Laws 1966, Ch. 87, § 1."

When the legislature enacted this section there was only one agency involved, the Industrial Commission. At that time the Industrial Commission was both the carrier and the administrator and the Commission did not itself protest such awards since it would be protesting its own actions. Any protest of the loss of earning capacity award was by the claimant contending that a higher amount was due than was actually awarded by the Commission. The Commission was presumed to stand by the award that it made and would suffer no injury by continuing payments under the award pending appeal. § 23–952 A.R.S. then continued the award in the amount that the Commission had previously determined pending a review of the award to determine whether or not a higher amount should be ordered.

In 1969 the administrative function and the carrier function of the Industrial Commission were separated and private insurance carriers were encouraged to come into the industrial compensation field. At

the present time, pursuant to § 23–1047 A. R.S., the Industrial Commission in its administrative capacity issues the loss of earning capacity awards. However, now both the insurance carrier or the Fund and the claimant may protest such award and ask for a hearing. As the memorandum of the Commission states:

"Since the clear intent of § 23–952 was to provide the applicant the minimum compensation to which he was entitled under the protested award, while awaiting the outcome of a hearing in which the only issue was an increase in the previous award (see Beck v. Hartford Accident and Indemnity Co., 107 Ariz. 476, 489 P.2d [710] 473 ([1971] 1970)), the difficulty facing The Industrial Commission is in carrying out such intent under substantially different circumstances than existed at the time the statute was originally enacted."

The Commission admits that:

" * * * From the claimants' viewpoint, the humanitarian purpose of providing for at least some compensation for an injured worker during the period awaiting a hearing would suggest that The Industrial Commission ought to interpret § 23–952 as suggested by Petitioner in this case. If indeed, the only legitimate issue is whether or not applicant is entitled to a greater loss of earning capacity than was established in The Industrial Commission award, then the Commission, assuming no constitutional conflicts, clearly ought to enforce the provision of such an award in the interim between its issuance and a decision upon hearing.

"However, it is frequently, if not always, difficult to decide whether the only legitimate issue is an increase over and above the loss of earning capacity established in The Industrial Commission's award. * * *"

The Commission points out, however, that set off against this humanitarian viewpoint:

" * * * An interpretation of 23–952 by The Industrial Commission which would always require the carrier to pay compensation as provided in a loss of earning capacity award during the interim period prior to a decision upon hearing would present substantial injustice to the insurance carrier. First, such interpretation would require insurance carriers to carry out the requirements of awards which had not become final, would present a clear constitutional due process problem. Further, if the insurance carrier did actually feel that the award had erroneously established an unjust loss of earning capacity, the money paid out by the carrier in the interim before it could establish its position at a hearing might well be nonrecoverable, and would at best impose a substantial recovery burden upon such insurance carrier."

The Industrial Commission in the instant case based its decision upon an interpretation of § 23–952 A.R.S. that when such protest by the carrier raises an issue greater in scope than merely an increase of a previous award then payments may be terminated. Claimant contends by following such interpretation:

" * * * an unscrupulous insurance carrier could obviate the underlying purpose of § 23–952 by filing a protest in every case in which the applicant filed a protest merely to avoid paying interim benefits, and not to genuinely contest a Commission award."

We share claimant's concern and the injustice to a claimant is apparent where, as in the instant case, the injured workman has been without compensation payments for more than a year. We do not believe, however, under our statutes and Constitution we can provide to the claimant the relief he deserves. The legislature by leaving the statute unamended at the time the function of the Commission and the Fund were separated indicated an intention that the payments should continue "*only*" when there was a question as to an increase in the amount of the award. Claimant's relief is in legislation, not judicial interpretation of the statute. Reluctantly, we must affirm the actions of the Commission.

In deciding as we do, we wish to point out that a review of the record in this case does not indicate the motion of the carrier was frivolous or made in bad faith. Should it appear that the motion for hearing is made in bad faith or is frivolous, then we could consider the problem in light of our constitutional mandate requiring the legislature to enact a workman's compensation law:

"* * * in order to assure and make certain a just and humane compensation law in the State of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, * * *." Arizona Constitution, Art. 18, § 8, 1 A.R.S.

Subject to the above caveat the decision of the Commission refusing to order payments to continue pending a hearing on the award is affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.